May it please the Court. Good morning. My name is Mina Chang, and I represent the United States. Your Honors, I'd like to reserve two minutes of my time, and I will monitor the clock. The sole issue in this case is whether Paul Engstrom is qualified for safety relief, and the answer to that three times over is no. The district court erred in three independent and dispositive ways when its sua sponte conducted essentially a do-over of its decision under Rule 35 a week after sentencing. The district court incorrectly credited Mr. Engstrom with a safety valve reduction, despite being disqualified by his criminal history and lack of full disclosure, and then amended its judgment to a sentence below the mandatory minimum that was set by Congress. As an initial matter, the district court did not have authority under Rule 35A of the Federal Rules of Criminal Procedure to reconsider its criminal sentencing decision when there was no error to correct. Second, Mr. Engstrom did not fully disclose all the information and evidence that he had regarding his criminal conduct to the government, and nor did the district court make that determination, as was necessary under the requirement. And lastly, as the Supreme Court's decision in Pulsifer makes evident, Mr. Engstrom has a prior three-point offense that disqualifies him for relief under the relevant statute. Taking first Rule 35, the district court plainly erred by improperly using Rule 35A as a vehicle to reconsider its sentencing decision. As a general principle, the district court can't modify a term of imprisonment after judgment, and that is only an exception in very limited circumstances. Does your argument on this one hinge on whether he actually made a determination on whether the safety valve provision applied? Because I was sort of a little sympathetic to the district court to say, look, I asked the question, I was told that it didn't, but I never actually said whether it applied or it didn't apply, so I need to go back and fix that. Your Honor, based off of the record, it appears that the district court did accept and make that determination that the safety valve provision didn't apply. But moreover, during its Rule 35 hearing, what was evident is that the district court then went back to reconsider its sentencing enhancements to then give Mr. Engstrom a further negative four reduction on the original sentence. That was a downward variance? Yes, Your Honor. Not a guideline adjustment? Yes, Your Honor. Can I ask, if I had been the district judge and read a transcript of the original explanation, was vague, ambiguous, contradictory? And one of the things that I guess is an open question for me is, what do you think the standard of review should be for a district judge's choice to say, I want to have a Rule 35 hearing and revisit some things? Your Honor, I think there are two parts to this question. The first being whether the district court made a clarification on something that it deemed ambiguous. And in this case, the district court, if it had indeed been simply to clarify whether it had or had not applied the safety valve reduction and to make that clear, then ultimately the numbers of that sentence for Mr. Engstrom would not have changed. So your objection is not to the Rule 35 hearing, it's just the substance of what was done at the hearing? It's to both, Your Honor, because What's wrong with the hearing in itself? If it was unclear whether or not safety valve applied, then to clarify that seems proper under Rule 35A. The issue is that because the district court then re-sentenced Mr. Engstrom to a different custodial time, that would also Right. Well, that's what I'm saying. It's not the objection to the hearing itself. It's what she then did at the hearing. If indeed the case had been merely to clear up an ambiguity, then she would have been entitled through Rule 35 to clarify that, and she could have done that through a written order as well. Oh, I see. Yeah. But you don't have to win on this argument, right, to prevail in the case? Yes, Your Honor, that's correct. Under the United States v. Pallstaffer decision, because Mr. Engstrom had a prior conviction from 2017, he had a prior three-point offense that neither probation, the district court, and the parties contest. So let me ask you, if we agreed with you on Pallstaffer, would we still need to reach whether the district court just erred on the safety valve relief at all, or would we just go to Pallstaffer and say, now it's clear? Your Honor, the panel need not conduct any further analysis in order to find reversal. But at the same time, for Rule 35, the government believes that because it had called a Rule 35 hearing improperly and then resentenced Mr. Engstrom to a different sentence, rather than just vacating and resentencing, we would ask that the amended judgment be reversed and that the original sentence that Mr. Engstrom received, 70 months, be imposed. I understand why you want that. And this is where I was going to go as well. But so do you think that difference between reinstating the original sentence and remanding for a resentencing consistent with Pallstaffer, how do we make that choice? Does that turn on the procedural niceties of whether the 35A invocation was proper? Your Honor, I believe that the panel has multiple bases for reversal. In this case, we believe, procedurally speaking, because the district court had no authority under Rule 35 to resentence, that it should impose the original sentence of 70 months. So no authority under Rule 35 to resentence. Let's suppose the district judge had sentenced, say, to 58 months originally, instead of the 60-month mandatory minimum, and then realized, oops, I blew that, I need to fix this, I'm going to do a Rule 35 correction of this plain error. Could she then go in and put in a – at the Rule 35 hearing, put in a 60-month sentence? Your Honor, because Mr. Engstrom in this case did not qualify, he did not fully disclose. I'm sorry. Please just go with my hypothetical. Could a district judge who has given an improperly low sentence below a mandatory minimum use Rule 35 to correct that mistake? Yes, Your Honor. Okay. So substantively, you can change the sentence in a Rule 35 hearing, right? Yes, Your Honor. I understand you think this was wrong, but it was wrong in your view on the substance as opposed to saying you were never entitled to use Rule 35 at all. That's correct, Your Honor. Okay. And maybe I'm asking the same question, but it seems like your argument is the district court applied F-5 and just used the completely wrong legal standard to do so. That's correct, Your Honor. So should we reach that? I mean, is there enough need to clarify that, or should we just focus on the Pulsifer issue? I believe that there are two equally valid reasons for why this court should reverse. I understand that the panel is asking whether we should prioritize one or the other. In this case, we believe that because the district court had originally provided a correct sentence, that that sentence should still stand. Can I ask a quick question? If we go the Pulsifer route, do we have to engage in any fact-finding? Are we just judicially noticeable the facts of his conviction, prior convictions? Yes, Your Honor, I believe so. The district court had adopted the calculations that probation had provided, had agreed with the findings in the PSR as well. So on that basis, because the parties are— And there's no discretion under Pulsifer that he's just ineligible? There's no discretionary—what if we were to remand to the district court to say, apply Pulsifer instead of finding it ourselves? Is there any discretion for the district court to say that Pulsifer doesn't apply? Not in this case.  Okay, thank you. We'll give you time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. I'm Houston Goddard. I'm here on behalf of Paul Engstrom. I want to begin where we left off, discussing Pulsifer. And the government's—what I really want to focus the court's attention on is the fourth prong, the plain error view for the Pulsifer, the purported Pulsifer error. Even if this court were to determine that there were error and it was plain, given Pulsifer, the government still needs to establish that that error affected the—satisfied the fourth prong of plain error. The government, in its briefing, essentially treats the fourth prong as an afterthought. Says if there's error and it's plain, then it automatically essentially satisfies the fourth prong. The government is going off of Justice Sotomayor's majority decision in Morales, where she said in the ordinary sentencing case, where a defendant received a sentence higher than he otherwise would have due to an error, the fourth prong is generally satisfied. Sure. But what Judge Thomas—let me say, importantly, this is not your ordinary sentencing case. And what Judge Thomas makes clear in his dissent in Morales is that outside of this subset of cases that Justice Sotomayor has taken off the table, your ordinary sentencing cases, outside of those cases, the fourth prong has real bite. It has real force. That this Court should—Circuit Courts generally should very rarely correct errors that were not preserved. And there are three reasons that I'd like to highlight why Mr. Engstrom's case is not your ordinary sentencing case. But when you say correct errors that were not preserved, because this specific—the Pulsifer argument was not specifically made. I mean, clearly they challenged whether the safety valve applied. Correct, Your Honor. But the government did not make any arguments on Pulsifer. Of course, Pulsifer didn't exist at the time. Right. But it was before the Supreme Court. The arguments were well known. I believe the Ninth Circuit's decision in Lopez by the time of Mr. Engstrom's sentencing was a minority opinion. It was controlling law, absolutely. But the government could very easily have said, we recognize that Lopez is controlling— But I thought that's how you got to plain error. I mean, back—I hadn't focused on this before. Is this—are you making a forfeiture argument or a waiver argument? No, Your Honor. I'm making a fourth prong of plain error. The parties agree we're on plain error for the Pulsifer error. The government has to satisfy all four prongs, including the last and final fourth prong, which Justice Thomas has made clear, citing Supreme Court precedent, has real bite and real force outside of these ordinary sentencing cases that Morales removed. And the reasons this is not your ordinary sentencing case are, number one, Mr. Engstrom is not—has served his time in prison. He is at a halfway house. He's in the process of reintegrating into the community. This is not your ordinary case where this court's decision will affect how much more time an inmate needs to serve. Is that the basis for your judicial notice? Yes, Your Honor. Yeah. The second reason is, as the court is aware in this case, Mr. Engstrom— If we adopt Pulsifer, he would go back into prison? Yes, Your Honor. He is currently living in a halfway house, reintegrating into the community. It's my understanding he is taking classes at UNLV. He's doing very well. If this court were to reimpose the sentence of 70 months or remand the district court with—where the district court could only impose the lowest possible sentence would be 60 months, Mr. Engstrom would be plucked out of the community and sent back to prison, which would work against the goal of Mr. Engstrom's rehabilitation in the community, which I'm sure is what we all ultimately want here. But if the safety valve finding was inappropriate, how does that meet the fourth prong? He's not eligible for safety valve. Sure. And in every case where we're talking about the fourth prong, there is error and it is plain. The sentence is incorrect. Right. But there's no substantial, you know, unfairness to the—to finding error here where he should have been under the mandatory minimum in the first place. Right. But the question and the burden is on the government here is to show that noticing this error, you know, is important to the integrity and public reputation of the judicial proceedings. Well, but isn't it—I mean, if you came up here and there was a case that said he should have—let's say it went the other way. Let's say Pulsifer had gone the other way. You'd be up here arguing, no, the safety valve was correct in the Supreme Court. And I'm sure you'd be saying, well, that's unjust, that I wouldn't get the benefit of that. And I'd be arguing that this was the ordinary case that Justice Sotomayor was mentioning, where defendants' liberty interests are at stake, where a defendant is an inmate, a defendant is an individual, is serving more time than he should have because of the error. And that's different than a defendant serving less time. I think it is, especially in a case where the defendant is already out of prison. If this was, okay, you know, we're going to, you know, he's just going to have to stay in the U.S. penitentiary several more months, that's one thing. That seems to suggest that the bigger the error, the less cause there is to fix it. In terms of, you know, because he was released earlier? Yeah. Well, I mean, it depends on the case-by-case determination. And if there was a case where someone got a, you know, a 300-month windfall, it would be a different argument. I would be in a worse position. Here, the difference between Mr. Engstrom's 46-month sentence and the mandatory minimum is 14 months. He would be sent back to prison for 14 months, or if 70 months were imposed, that's 24 months. This is not a massive amount of time that Mr. Engstrom would have to go back to prison. Do you have any cases applying this? Because I'd understood your argument, and are you abandoning your argument of, you'd said, look, you can't apply it retroactively because of the, I think, the Bowie case exception. You aren't focusing on that. I'm not sure, I don't want to say you're abandoning it. I am certainly not abandoning it. That is an argument on prongs one and two, and this is a separate argument on prong four. If this Court were to find there were error, that satisfies prong one. If it was plain, it was prong two. But you still have to get through three and four. So this is a prong four argument. The second reason, this is sort of the outside of the ordinary. But my question was, are there cases on this prong four that you could point us to that have adopted this argument you're making, that, I mean, there's — I don't want to say it's without force, that, you know, he's out of jail, what's the point, but has any court actually bitten on this argument? I'm not sure about precisely the out-of-jail point, but, you know, in Ms. Strangstrom's briefing, it mentions a case, Gorsuch, out of the First Circuit, I believe, where it's the same situation, where there was a mandatory minimum. And the Court said, because it didn't — it opted not to — prong four was discretionary. It opted not to notice the error under prong four and allowed a sentence below the mandatory minimum that otherwise would have applied to stand. So there is precedent for this, Your Honor. Doesn't the government have some interest in having — ensuring that its, you know, its convictions are properly followed and the sentence following the conviction is properly followed? Certainly. There are considerations on both sides, Your Honor, but what the government — So go ahead. So what the government has to show is that noticing this error, you know, not noticing this error would seriously affect the fairness, integrity, and public reputation of judicial proceedings. And I'm — my argument here is that there are considerations on both sides. I mean, there is a windfall where the safety valve should have — I mean, I'm sorry, the mandatory minimum should have applied, and other defendants, you know, are facing mandatory minimums. And this one defendant all of a sudden gets a random windfall. Isn't that in government's interest to defend against that? Absolutely. That's the government — you know, the argument the government has made. And the argument on the other side is that Mr. Engstrom has served the time in prison. He is out in the community. And the other reasons that make this case extraordinary are, number one, Mr. Engstrom served 16 months in pretrial detention solely because of misrepresentations made by government counsel. This is in the supplement record filed by Mr. Engstrom. You can read the magistrate judge's blistering release order taking government counsel. And I should note, it was not — Wasn't he credited for that? He was credited for that. But he served 16 months in pretrial custody, which is the hardest custody you can serve. There's no programming. And it was a time he should not have been in prison. I mean, it was due solely to misrepresentations from government counsel. So this is — my argument here is that this is not an ordinary case. So does it — I'm just thinking through this prong-four argument. Does it matter that he was — that this was sort of a resentencing under 35, meaning if the initial mistake had been made and everybody always thought, hey, 46 is the answer, you know, that might be a different scenario than, hey, you got 70, you were expecting 70, you went in, you got some relief. That relief that you got from 70 turns out not to be right. Does that play a role here? Well, I appreciate Your Honor's question, because it leads right into the final point on this prong-four argument I was going to make, which is this is an extraordinary case because Mr. Engstrom was representing himself pro se. And I promise I'll get to Your Honor's question. He was representing himself pro se, very unusual. He sat down with the government and negotiated an agreement where he agreed, he stipulated, he was not eligible for safety valve, which, at least in Judge Trum's opinion under the law at the time, was wrong. He was eligible for safety valve. He shows up. He asks for a 60-month sentence. Judge Trum gives him 70. He doesn't ask for reconsideration. He doesn't ask for any error to be corrected. He doesn't appeal. What happens is Judge Trum's response corrects the sentence. The government then moves for reconsideration and the government then appeals. Mr. Engstrom didn't ask for any of this. He just did what he was told to do. He showed up and he asked for the sentence he had agreed to ask for. He reported to prison. He served the time he was told to serve. He's now in the community. He didn't seek any of this. And if this Court agrees with the government, he's going to be plucked out of the community and thrown back into prison. And I would submit that that would not advance the interests of fairness or the integrity and the public reputation of judicial proceedings. Are you defending at all the granting of safety valve based off of the debrief requirement? I mean, have you ever seen the granting of the debrief requirement based off of statements made in open court? I have not, Your Honor. But the statements made in open court were before the time of the resentencing, which very clearly in my submission falls within what Judge Trum was entitled to take into consideration. The Rule 35 hearing was the government itself in its briefing described it as a resentencing. In Mejia, you know, a case before this Court where there was a resentencing, the Court looked to anything that had come before that. And Mr. Engstrom's allocution at the first hearing was certainly before the time of the statute where the statute sets the cutoff. Well, even that, is there any case that allows open court hearings to be counted as a debrief where you tell everything openly and honestly about what your involvement in the crime? No, but what the statute says is that, you know, the defendant must provide complete information, which Judge Trum found that he did. Okay. Where's the clear finding that he did? And for example, did he disclose the cyber currency transactions, the methods that were used, and so on? I'm not sure. Did he identify the cyber currency that was being used? I mean, he talked about the exchange was on. I don't know the full extent of Mr. Engstrom's knowledge. But what Judge Trum found, and this is on 1 ER 31 to 32, she sets out the correct standard. He needs to provide truthful and complete information. That's an absolutely correct statement of law. Then she goes on to run through everything that he set out, and then she concludes that is enough to satisfy paragraph A-5. That is a finding that Mr. Engstrom has provided truthful and complete information, which is what safety valve requires. So isn't the problem, you said that he'd ask for none of this. It's the district court that kind of bogs this up, and it will maybe result in him being yanked back into trial, right? I'm not sure I would say the district court bogged it up. That wouldn't be my characterization, Your Honor. I think the district court properly identified that it had not made a finding at the first sentencing and needed to correct that at the second.  That was fair. Yeah. But then beyond that, then she then went much further. All right. Well, I see I'm past my time. Thank you.  Thank you. Your Honors, enforcing an incorrect sentence based off of the safety valve relief which Mr. Engstrom himself willingly negotiated and stated would not apply would affect the government's rights to have defendants correctly sentenced and implicate the judicial fairness of the criminal system, particularly in this instance where Congress mandated that the crimes such as Mr. Engstrom's would warrant a mandatory minimum and to which repeat offenders such as Mr. Engstrom would not be eligible for a sentence below that mandatory minimum. So can I just ask on the prong for it, is the test that we're applying, I'm looking at Gonzales-Zotello from 2009. It says that the government show there's a reasonable probability that the defendant would have received a different sentence but for the district court's error. Is that all? I mean, is the government's position that that's all you have to do to satisfy prong four? In this instance where the issue was that the district court resentenced Mr. Engstrom, it's clear that that is what in this case was the issue. It's clear that he is out and we'd be putting him back in and I mean do we take any of that into account? I believe that in this case the government's interest to have defendants correctly sentenced and to have district courts also follow rules of the court is an equal if not greater interest in this case. Should we give any weight to the district court's finding concerning the pretrial detention and the reasons for it? Yes, your honor. To the extent that the district court gave a variance to provide for that, yes, but the district court was restricted in terms of the safety valve and dipping below congressionally mandated statutory minimum. Well, yeah, the district court has that binding minimum on it, but this court has discretion, right, on that fourth prong? Yes, your honor. So should we consider that? In this case, your honor, because there was significant error in this case, we believe that the government's interest is greater than a sentence that Mr. Engstrom received based off of the safety valve relief, which he himself did not argue for and did not agree applied to him. Thank you. Thank you, your honor. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: Hamilton, NELSON, BUMATAY